[Crim. No. 4949. In Bank. May 3, 1949.]

In re WALTER J. SMITH, on Habeas Corpus.

Walter J. Smith, in pro. per., for Petitioner.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

SCHAUER, J.—By this application for the writ of habeas corpus petitioner, an inmate of Folsom State Prison, seeks his release upon the ground that on March 16, 1947, the term of his imprisonment as then fixed by the Adult Authority, with credits earned and allowed, expired. This contention, as will hereinafter appear, is not sustained by the record.

In 1942, petitioner began service of concurrent sentences for attempted robbery, robbery of the first degree and violation of section 503 of the Vehicle Code (driving or taking a vehicle in absence and without consent of owner). In 1944, he was released upon parole. Prior to the time of such parole petitioner's term had been fixed at five, eight and five years, the sentences to run concurrently. His "ticket of leave" (which set forth the conditions of his parole) stated, among other things, "Expiration of Sentence March 16, 1947 with benefit of credits if allowed." On February 18, 1947, petitioner's parole officer reported to the Adult Authority that petitioner had violated a term of his parole in that he had been using alcohol to excess; that petitioner's mother in Michigan had offered to give petitioner a home and arrange for employment for him; that the Parole Bureau was attempting to make arrangements with Michigan parole officers permitting transfer of petitioner to that state; that "a change of environment may be of considerable assistance to him in re-establishing himself. However, subject's violation of the parole regulations by drinking is of such a serious nature . . . that his parole term should be extended to maximum, then allowing future conduct to determine the length of term subject should serve." Thereafter the Adult Authority made the following order dated March 7, 1947: "Term of Robbery 1st degree charges refixed at 10 years. No credits for current period." This action of

the Authority was taken without giving petitioner notice or opportunity to be heard. For reasons hereinafter stated petitioner urges that this order and, therefore, the subsequent orders of the Adult Authority as to him are void.

Early in May, 1947, petitioner, without notice to or consent of his parole officer, left his place of residence and his employment and went to Michigan. His "ticket of leave" provided that such conduct was in violation of the terms of his parole. On May 26, 1947, petitioner's parole officer advised the Adult Authority that petitioner had violated his parole in the above respects and that "Subject has apparently passed some forged checks . . . and a warrant has been issued for his arrest by the Los Angeles Police Department." Pursuant to the parole officer's report the Authority ordered that petitioner's parole be suspended and he be returned to prison. Petitioner was apprehended in Wisconsin, returned to Los Angeles, pleaded guilty to the forgery charge and served a sentence therefor in the county jail. Upon his release from the county jail he was returned to state prison and, after notice and hearing, the Adult Authority revoked his parole and forfeited six months' credits.

It is petitioner's position that, as stated above, the order of the Adult Authority dated March 7, 1947, was void and that, therefore, his term expired on March 16, 1947, and subsequent orders of the Adult Authority cannot revive such term. (See *In re Shull* (1944), 23 Cal.2d 745, 753 [146 P.2d 417], which, petitioner contends, is analogous to the present situation: "[O]nce a prisoner has been allowed credits and by reason thereof his reduced term has expired, his term, as not reduced, may not thereafter be revived by a forfeiture of credits for conduct occurring after the expiration of his reduced term.") Petitioner urges that the order dated March 7, 1947, was void for two reasons: first, because it was not actually made on March 7, 1947, but was made *nunc pro tunc* after March 16, 1947, when petitioner's term, as then fixed, had expired; second, even if the order was made before expiration of the term fixed, it was invalid because it was made without petitioner's receiving notice and an opportunity to be heard.

In support of his contention that the order was made *nunc pro tunc* petitioner asserts that it is not "certified as a true and correct copy of the minutes of the Adult Authority." Statutory provisions pertinent to authentication and use of such a copy are: "Documents of any other class [there is no

other provision covering minutes of the Authority] in this state [may be proved] . . . by a copy, certified by the legal keeper thereof.'' (See Code Civ. Proc., § 1918, par. 6.) ''Whenever a copy of a writing is certified for the purpose of evidence, the certificate must state in substance that the copy is a correct copy of the original . . . The certificate must be under the official seal of the certifying officer, if there be any . . .'' (Code Civ. Proc., § 1923.) The attorney general has filed a document purporting to be an ''EXCERPT FROM . . . MINUTES of a meeting of the ADULT AUTHORITY Held . . . March 7, 1947,'' which contains the order in question and upon which appears the following handwriting, ''Attest: Sept. 29, 1948. E. A. Burkhart''; the following by rubber stamp impression, ''Executive Secretary, Adult Authority, Department of Corrections''; and the seal of the Authority. ''No certain words are necessary to create a valid certificate attesting a purported copy as a 'certified copy.' '' (*Harting v. Cebrian* (1935), 10 Cal.App.2d 10, 17 [51 P.2d 195].) Generally recognized meanings of ''attest'' include ''to certify to the verity of a copy of a public document formally by signature . . .; to affirm to be true or genuine . . . It has been said that the word is appropriately used for the affirmation of persons in their official capacity to test the truth of a writing, and that it is the technical word by which, in the practice of many states, a certifying officer gives assurance to the verity of a copy.'' (7 C.J.S. 691.) Therefore, it appears that the copy of the minutes is acceptably certified.

There is a disputable presumption that the minute entry of the Authority which recites the order, and which is evidenced by the certified copy, is truly dated; there are also similar presumptions that official duty has been regularly performed and that a person is innocent of crime or wrong. (Code Civ. Proc., § 1963, pars. 23, 15, 1.) Petitioner alleges no facts and produces no evidence sufficient to dispel these presumptions. He asserts that because of ''the fact that no notice or hearing was given to petitioner, it is his stand that no such order was made on March 7, 1947.'' Whether petitioner was given notice or hearing is not relevant to the date of the making of the order for, under the circumstances shown and as is hereinafter explained, the Authority was not required to give notice and opportunity to be heard prior to, or notice after, the making of the subject order. Petitioner asserts, further, that he has ''reason to believe that the re-

fixing of his term of imprisonment was by a nunc pro tunc proceeding subsequent to the expiration of the original term fixed on March 16, 1947, as petitioner's request (by letter) for the subpoena of Mr. A. E. [sic] Burkhart, Secretary to the Adult Authority, and his records, was not received by this Honorable Court. Petitioner believes upon information that the Prison Officials withheld his letter from the United States Mail. That petitioner expected to establish by Mr. Burkhart and his records that the order of March 7, 1947 . . . was made in a nunc pro tunc proceeding subsequent to the expiration of petitioner's term of imprisonment and parole.'' Petitioner cannot now rely upon his asserted belief that the records of the secretary of the Adult Authority would show that the order dated March 7, 1947, was made at a later date and falsely dated, for the following reasons: As petitioner indicates, this court has never received from him a request ''for the subpoena of Mr. A. E. [sic] Burkhart, Secretary to the Adult Authority, and his records.'' According to a letter from petitioner to this court, dated and received after oral argument of this matter, petitioner had in mind at the time of such argument his asserted desire, and his asserted unsuccessful attempt to communicate to this court his desire, to produce the records before this court. Nevertheless, petitioner did not mention this during oral argument and upon such argument rejected the offer of the court to appoint counsel to aid petitioner in the presentation of his contentions. In these circumstances we do not accept as proof of any pertinent fact petitioner's assertion, made for the first time in his ''Reply to Respondent's Return,'' dated and filed after the last above mentioned letter from petitioner received by this court, that he ''expected to establish'' by unidentified contents of the secretary's records, that the order dated March 7 was made *nunc pro tunc*.

 Petitioner next asserts that, assuming that the order of March 7, 1947, is correctly dated, it is void because the Adult Authority failed to comply with sections 2923 and 2924 of the Penal Code. The pertinent substance of those sections is a provision that the Authority (''unless such offender be outside the walls of the prison as an escape and fugitive from justice'') ''may declare a forfeiture of . . . time credits theretofore earned by or allowed to'' a prisoner only upon notice, hearing, proof and a finding that the prisoner was guilty of misconduct. The order of March 7, however, does not purport to ''declare a forfeiture'' of time credits; rather

it refuses to allow "credits for current period." Time credits do not accrue as a matter of right but must be allowed by affirmative action of the Adult Authority in its discretion (see Pen. Code, §§ 2919, 2920; *In re Mann* (1923), 192 Cal. 165, 166 [219 P. 71]; *In re Bogden* (1924), 193 Cal. 21 [222 P. 353]), and no provision of law requires that the Authority, when considering whether a prisoner has earned and should be allowed credits, need give notice and hearing or make a written finding as to the reason for its action.

■ Likewise without merit is petitioner's contention that the order of March 7, 1947, violated section 3063 of the Penal Code. That section provides that "No parole shall be suspended or revoked without cause, which cause must be stated in the order suspending or revoking the parole." The order of March 7 does not purport to revoke parole. There is no provision of law requiring that an order refixing the term of sentence state the cause of its making, and (we assume that such an order cannot be made upon mere caprice or for no reason) it cannot be said that the order, made pursuant to the parole officer's factually unchallenged report and recommendation, was without cause.

■ Section 3020 of the Penal Code, which authorizes the Adult Authority to redetermine the length of time of imprisonment, does not require that the prisoner be given notice or opportunity to be heard. Such requirement was eliminated in 1941. (Stats. 1941, ch. 106, § 15, p. 1110; see *In re Etie* (1946), 27 Cal.2d 753, 759 [167 P.2d 203]; *In re Borgfeldt* (1946), 75 Cal.App.2d 83, 85 [170 P.2d 94].) ■ The only statutory provision as to notice in the case of such a redetermination is that "At least 30 days before the board [Authority] shall meet to fix and determine the length of time any prisoner shall be confined, the said board shall send written notice thereof to the judge of the superior court before whom the prisoner was tried and convicted, and to the district attorney and the sheriff of the county from which the prisoner was sentenced." (Pen. Code, § 3022.) As petitioner points out, there is no showing that the Adult Authority gave such notice; on the contrary it appears to be the position of the Authority that its action of March 7, 1947, was based on the parole officer's report of February 18, 1947; thus there was not sufficient time after the Authority received the information which led to its refixing petitioner's term for it to give the statutory 30-day notice. In our opinion, failure of the Authority, under the circumstances shown, to give notice to

the judge, district attorney and sheriff as provided by section 3020 does not invalidate its order redetermining the length of time petitioner shall be imprisoned. It is suggested in *In re Knaesche* (1937), 22 Cal.App.2d 667, 671, 672 [72 P.2d 216], and stated in 3 Ops. Atty. Gen. (1944), 88, with reference to the similar statutory 30-day notice to judge, district attorney and sheriff before the Authority acts upon an application for parole (Pen. Code, § 3042), that the Authority "could not act on . . . any parole until thirty days after written notice is sent to the officers named in that section." But we cannot believe that the Legislature by such provisions as those of sections 3022 and 3042, intended to deprive the Adult Authority of all power to act in a situation where such Authority otherwise had power to act but where it was impossible to give 30 days' notice; where, for example, as here, the Authority, less than 30 days before expiration of a prisoner's term as fixed, received information which indicated that it would be for the best interests of the prisoner and society that he remain in custody.

■ Petitioner next contends that the want of provision for notice and hearing before the Adult Authority redetermines the length of time a prisoner shall remain in custody is not in accord with due process of law (U. S. Const., Amendment XIV; Cal. Const., art. I, § 13). We cannot agree with petitioner that the action of the Authority in lengthening a term of imprisonment beyond that originally (and by law only tentatively) fixed but still within the maximum term provided for the offense of which his guilt has been adjudged, constitutes a deprivation of liberty within the meaning of the due process clauses of the federal and state Constitutions. Petitioner has been deprived of his liberty, in compliance with due process of law, by the trial court's adjudication that he is guilty and the ensuing imposition of sentence for the indeterminate period; the Adult Authority, by administering the indeterminate sentence law, does not further deprive the prisoner of liberty. ■ A prisoner (including one who is "constructively a prisoner under sentence in the legal custody and under the control of the Department of Corrections" [*In re Marzec* (1945), 25 Cal.2d 794, 797 [154 P.2d 873]]) has no "vested right" to have the term of imprisonment which he is serving fixed or remain fixed at less than the maximum term prescribed by law (see *In re Cowen* (1946), 27 Cal.2d 637, 641 [166 P.2d 279]; *In re Hicks* (1938), 28 Cal.App.2d 671, 674 [83 P.2d 73]); i. e., in the case of peti-

tioner, life imprisonment (the maximum punishment for robbery of the first degree [Pen. Code, §§ 213, 671]). So long as the prisoner remains in custody, actual or constructive, the Adult Authority may determine and redetermine his term of imprisonment in accord with the best interests of the prisoner and society, without notifying the prisoner that it proposes to act on the question of the length of time he shall be imprisoned.

For the reasons above stated the writ is discharged and petitioner is remanded to the custody of the warden of Folsom State Prison.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.