[Crim. No. 6714. In Bank. Dec. 27, 1960.]

In re LARRY WAYNE McLAIN on Habeas Corpus.

Werner D. Meyenberg and Lacey, Holbrook & Meyenberg for Petitioner.

Stanley Mosk, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

PETERS, J.—Was petitioner granted a valid and operative parole? If so, was that parole validly suspended or revoked? Was the sentence of petitioner validly redetermined by the Adult Authority? What is the sentence petitioner is now serving? These are the basic questions presented by this petition. They arise under the following circumstances:

On November 5, 1953, petitioner was convicted, on his plea of guilty, of attempted robbery while armed with a deadly weapon, and was sentenced to prison for the term prescribed by law.[1] On November 17, 1953, petitioner was received at Chino Guidance Center to commence his term of imprisonment. On January 15, 1954, he was transferred to the state facility at Tracy. On August 6, 1957, he was transferred to San Quentin. On June 18, 1958, he was transferred to Soledad. On August 28, 1959, he was transferred to Folsom, where he is now imprisoned.

At its regular May calendars in 1955, 1956, and 1957, the Adult Authority considered petitioner's status for determination of sentence, and on each occasion determined to postpone such consideration for one year. At its May Calendar in 1958,

---

[1]Section 213 of the Penal Code fixes a minimum of "not less than five years" punishment for first degree robbery. In such cases section 664 of the Penal Code fixes not more than 20 years as the maximum for attempted robbery while armed with a deadly weapon. Thus, upon conviction, until fixed differently by the Adult Authority, petitioner's term was 20 years. (*People* v. *Harmon*, 54 Cal.2d 9, 16 [4 Cal.Rptr. 161, 351 P.2d 329].)

held on April 22, 1958, the Adult Authority again considered petitioner's status and made the following order: "Term fixed at seven years. Granted two years on parole." Under this order, petitioner's term expired November 17, 1960, and his parole date was November 17, 1958. If this order is still effective, petitioner is obviously entitled to his release. If it was validly rescinded petitioner is being validly held in custody under a 20-year sentence.

On May 29, 1958, an inmate by the name of Mahoney, was stabbed in San Quentin. The next day, petitioner McLain was charged by the prison staff with a violation of institution rules and regulations as follows:

"RESPONSIBILITY UNDER STATE LAWS

(Knifing assault upon inmate Mahoney A-35401)

(Suspicion of complicity therein)."

This charge was referred to the prison disciplinary committee.

The prison staff interviewed both McLain and Mahoney several times and also interviewed several other inmates. McLain denied any connection with the knifing, denied talking to Mahoney just prior to the assault, and denied even being on the fourth tier of the cell block, where the assault occurred, at any time on the evening of the assault. As a result of the investigation by the prison officials the disciplinary committee found McLain "guilty of complicity as charged" and recommended that petitioner be kept in maximum custody, be transferred to Soledad Adjustment Center, that the case be referred to the District Attorney of Marin County and to the Adult Authority, that McLain be placed in isolation for twenty-nine days, be assigned to unassigned and "Loss of Dates." This last quoted recommendation undoubtedly refers to the parole and discharge dates fixed by the order of the Adult Authority on April 22, 1958. These recommendations and findings were affirmed by the warden.[2]

On June 9, 1958, the warden forwarded a written report of the incident to the Director of the Department of Corrections, with a copy to the Adult Authority. Attached to this report were copies of all reports containing the evidence collected by the investigating officials. The warden particularly noted that petitioner's current parole date was November 17, 1958, and his current discharge date was November 17, 1960.

---

[2]So far as the District Attorney of Marin County is concerned it should be here mentioned that some time later he indicated that "the prosecution on the offense of May 29, 1958, is not contemplated at present due to the unavailability of sufficient evidence."

The record of the investigation made by the investigating officials upon which the disciplinary committee and the warden acted disclosed that prior to the assault on Mahoney there had been very strained relations between McLain and inmate Lemon, on the one side, and inmates Mahoney and Cresswell on the other. Mahoney and Cresswell had been crime partners in several armed robberies in southern California. In January of 1956 both men were convicted of felonies, and were sent to the state facility at Tracy. Here they met McLain and Lemon. Cresswell was tagged as a "rat" by McLain and Lemon because he had apparently given evidence against Mahoney. All four men were subsequently sent to San Quentin. At that prison, Lemon and McLain put pressure on Mahoney to "take care of" Cresswell, or to take away his "Canteen draw" for being a "rat." Mahoney, who while in San Quentin, had been disciplined for having homosexual relations with Cresswell, defended the latter and tried to protect him from McLain and Lemon. Several weeks before the assault on Mahoney, Lemon challenged Cresswell to a fight, and Mahoney went along to see that the fight was fair. Cresswell administered a beating to Lemon in that fight.

After the fight, McLain and Lemon continued in their efforts to "get" Cresswell, but were unsuccessful, partly because Mahoney was protecting him. Apparently they decided that if they could get Mahoney out of the way, then they could get to Cresswell.

On the evening of May 29, 1958, after the evening meal, Mahoney and inmate Romero walked to Mahoney's cell where they stopped and talked. Romero then left. McLain came along and said to Mahoney "I'd like to see you down here." Mahoney and McLain then walked to the back stairs of the fourth tier when, without warning, Mahoney was attacked from the rear and stabbed in the back by the assailant who had a jacket over his head and who was not McLain. Mahoney turned and grappled with this assailant, who was presumably Lemon, and the assailant stabbed Mahoney in the chest and arms. While grappling with this assailant Mahoney was stabbed again in the back by another assailant who was probably McLain. Mahoney was stabbed seven times. One of the weapons, discovered later, was a table knife sharpened on both sides, and with its handle wrapped in tape. When discovered the blade of this knife was bloodstained. Mahoney, after being stabbed, staggered down the aisle. Romero and other inmates ran to his assistance. The assailant or assailants appar-

ently ran away down the back stairs. No one admitted seeing them escape. Mahoney was seriously injured. It was at first feared that he would die, but he has survived.

These facts were secured by the prison officials after interrogation of the principals and other inmates. McLain was interviewed on May 29th, and May 30th. He denied participation in the attack. He refused to give any statement in reference to the incident and asserted that he knew nothing at all about it. He claimed that he had never been on the fourth tier on the evening of May 29th, and had witnesses to prove it, but refused to give the names of such witnesses. He accused the interrogating lieutenant of violating his constitutional rights by not furnishing him with counsel. He denied even seeing Mahoney prior to or during the incident. The lieutenant interrogating him described McLain's attitude as "surly and hostile," and stated that McLain "indicated in no uncertain terms that even if he knew the whole story and who did it, he would not tell."

Mahoney was interviewed immediately after being taken to the hospital. At that time he failed to identify pictures of either Lemon or McLain, and lapsed into unconsciousness immediately after the interviews. The next day Mahoney gave a more complete statement. He stated that McLain came along as described above and asked to talk to him; that he walked with McLain to the end of the tier; that he was then grabbed from the rear and stabbed under circumstances already described. He indicated that he believed that Lemon was his assailant, but he could not positively identify him. About McLain he stated: "I am sure a 'sucker' to let 'Mad Dog' [a sobriquet of McLain's] pull me into a play like that, and the more I think about it, I think that 'Mad Dog' had a 'shank' also, because I had a hold of the other person when I got that other punch in the back." Mahoney then told the officer the background of the controversy between the parties, and about the fight between Cresswell and Lemon. The inmate in the cell next to Mahoney identified McLain as the one with whom Mahoney walked down the aisle.

A reading of this record does far more than raise a mere suspicion that McLain was involved in the attack. The disciplinary committee is, of course, not a judicial body, and not governed by the rules of evidence. It is charged with the duty of considering charges of breaches of discipline. On the record before it this committee was justified in finding that McLain was "guilty of complicity as charged."

This record, the findings and the recommendations of the disciplinary committee were before the Adult Authority when it met on June 16, 1958. Acting on that record it made the following order:

"Rescind action of 4-22-58, fixing term and granting parole. Place on November, 1958, cal."

The November, 1958, calendar of the Adult Authority was held on October 21, 1958. At that time the Authority entered its order "Denied. Further consideration postponed one year," and a similar order was entered in November, 1959.

In addition to the foregoing, the exhibits filed with this court indicate a few minor disciplinary infractions during McLain's period of incarceration. All of these occurred, with the exception of one minor one, prior to April 22, 1958, when McLain's term was considered by the Authority at its April, 1958, meeting, and were not considered as serious enough to deny him the fixing of a parole date. They are of no legal significance in connection with the problem now before us.

Section 3063 of the Penal Code provides: "No parole shall be suspended or revoked without cause, which cause must be stated in the order suspending or revoking the parole."

The parties argue as to whether this section is applicable to a situation where the Adult Authority has fixed sentence and granted a parole to commence at a future date but before that date arrives, seeks to rescind its action, and also argue (assuming the section to be applicable) as to whether the order of June 16, 1958, complied with the requirements of the section.

McLain contends that the section is applicable, and that the order purporting to refix his sentence and revoke his parole did not comply with the section and also violated the due process clause of the federal Constitution. He urges that the order of June 16, 1958, was void because made without notice to him and without affording him the right to be heard; and that it does not state sufficient cause for the purported redetermination or revocation of parole.

The point about notice and a hearing is without merit. ▮ The Adult Authority has the jurisdiction to determine sentences, and it may redetermine such sentences as conditions require. ▮ There certainly is no statute requiring the Authority to grant an inmate notice or hearing upon a redetermination of sentence. While section 1168 of the Penal Code formerly required notice and hearing before a prisoner could be deprived of a benefit once conferred, the section

has been amended many times, and was entirely recast into several sections in 1941. Section 3020 is now the key section in reference to the determination and redetermination of sentence. It eliminated the necessity for notice and a hearing (*In re Etie,* 27 Cal.2d 753, 758 [167 P.2d 203]; *In re Smith,* 33 Cal.2d 797, 803 [205 P.2d 662]). Section 3060 of the Penal Code was enacted as part of the same reform. It provides that the Authority shall have power "to suspend, cancel or revoke any parole without notice." (See *In re Etie, supra; In re Dearo,* 96 Cal.App.2d 141 [214 P.2d 585]; *In re Borgfeldt,* 75 Cal.App.2d 83 [170 P.2d 94].)

█ The provisions for determining or redetermining sentence and for granting, suspending or revoking parole do not violate due process because of the absence of a requirement for notice or hearing. The notice of a hearing was given and required to be given in the proceedings which resulted in the original conviction. Those proceedings resulted in a conviction and the imposition of a sentence that was indeterminate, and until fixed, amounted to a maximum sentence provided for the crime in question. When the Authority reduces a maximum sentence, its action, in the very nature of things, is tentative and may be changed for cause. Such procedure presents no federal question. (*In re Costello,* 262 F.2d 214; *In re Etie, supra,* 27 Cal.2d 753; *Dreyer* v. *Illinois,* 187 U.S. 71 [23 S.Ct. 28, 47 L.Ed. 79]; see annotations 132 A.L.R. 1248.)

Thus it must be held that petitioner was not entitled to notice or a hearing before the Authority when it redetermined his sentence and revoked his parole.

We do not find it necessary to decide whether the provision of section 3063 of the Penal Code requiring the statement of cause in the order of revocation applies to the factual situation here presented. This is so because, even if it be assumed (without deciding) that the requirements of the section are applicable, the record shows that they were complied with in the present case.

█ The order as set forth in the petition for habeas corpus and in the original return of the attorney general was incomplete. As there set forth the order appears to be based on a finding of the Authority that McLain was found guilty of "suspicion of complicity" in the assault on Mahoney. Such a finding, if it had been made, would, at most, justify a suspension of parole pending further investigation, not its revocation. If, as petitioner contends, parole was merely suspend-

ed by the order of June 16, 1958, pending further investigation, then a delay of about two and one-half years in concluding that investigation would be unreasonable in view of the fact that so far as the record shows, in fact, no further investigation was made. ▮▮▮ But, after oral argument, an "Amendment to Answer and Return to Order to Show Cause" was filed by the attorney general. Attached to this document, for the first time there was disclosed the complete order of the Authority of June 16, 1958. That order is on a form entitled "Recommendations of Disciplinary Committee and Adult Authority Action." After setting forth certain preliminary information the document sets forth the charge made before the disciplinary committee as follows: "D1103. Responsibility under State Laws (Knifing assault upon Inmate Mahoney-A35401-Suspicion of complicity therein)." Then follows a recitation of the plea of not guilty of McLain before the disciplinary committee, and the findings of the committee —"Guilty-of complicity as charged." This is followed by the listing of the discipline imposed by the prison officials, and this by the recommendation of the committee to the Adult Authority, which is "Refer to Adult Authority. Loss of dates. Place on 11/58 calendar." Then at the end of the document appears the order of the Adult Authority—"RE-SCIND ACTION OF 4/22/58 FIXING TERM AND GRANTING PAROLE. PLACE ON NOVEMBER 1958 CALENDAR (DISCIPLINARY 5/29/58)."

Thus the "suspicion of complicity" language relied upon by petitioner is not used to describe any action taken by the Authority but simply to describe the charge made against McLain before the disciplinary committee, and before the investigation had been completed. Then the order of the Adult Authority discloses that the disciplinary committee found McLain "Guilty-of complicity as charged."

Thus, when the order of June 16, 1958, is read as a whole, it cannot possibly be read as an order merely suspending parole. The words "rescind action of 4/22/58" are words of revocation not suspension. When the order is read as a whole it is quite apparent that the requirement of section 3063 of the Penal Code (assuming it to be applicable) that the "cause [for such revocation] must be stated in the order" was complied with. The order discloses that the "cause" for the order was that the disciplinary committee, on a record then before the Authority, had found McLain "guilty of complicity" in the attack on Mahoney. That, obviously, was good "cause"

for the revocation. ▮ When the order of revocation discloses on its face that it was based on the legal and proper findings of some other person or body authorized by law to make such findings, then such findings may constitute the "cause" for the order of revocation of the Adult Authority. In such event there is substantial compliance with the requirements of the code section. (*In re Conroy,* 117 Cal.App.2d 194, 198 [255 P.2d 102] ; see also, generally, *In re Payton,* 28 Cal. 2d 194, 197 [169 P.2d 361].)

▮ The order of June 16, 1958, did more than revoke parole. It also revoked its prior order fixing the term at seven years. The effect of this portion of the order was to redetermine the sentence of McLain, and to restore it to 20 years, the maximum. Thus, the order of June 16, 1958, was one revoking parole and redetermining sentence. As already pointed out, insofar as the order redetermined sentence there is no statutory requirement that it state the "cause" for such redetermination. But, obviously, good cause must in fact exist for the making of such an order. ▮ Even though a legally convicted person has no vested right to the determination of his sentence at less than maximum, his liberty, or denial thereof, may not be made to turn upon mere whim, caprice, or rumor. (*Fleenor* v. *Hammond,* 116 F.2d 982 [132 A.L.R. 1241, at p. 1246] ; *In re Smith, supra,* 33 Cal.2d 797, 803; *In re O'Malley,* 101 Cal.App.2d 80 [224 P.2d 488].) Thus in redetermining sentence, although no "cause" need be stated in the order, the conclusion is inescapable that such action cannot be taken in the absence of good cause. In the instant case such "cause" is disclosed both in the order, and in the record upon which the Authority acted. Thus, contrary to the contentions of petitioner the order of June 16, 1958, validly redetermined his sentence. Such sentence unless or until the Authority fixes it at a lesser date is a 20-year sentence. Thus petitioner is now properly restrained of his liberty.

The order to show cause is discharged and the writ of habeas corpus is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., White, J., and Dooling, J., concurred.

Petitioner's application for a rehearing was denied January 25, 1961.