Robert **DORADO**, on behalf of all others similarly situated, Appellant,

v.

Henry W. **KERR**, Chairman, California Adult Authority, in his official capacity, Appellee.

No. 26039.

United States Court of Appeals, Ninth Circuit.

Jan. 4, 1972.

Rehearing Denied March 20, 1972.

B. E. Bergesen, III (argued), of Youth Law Center, San Francisco, Cal., Armando M. Menocal, III, Michael S. Sorgen, of San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for appellant.

Nelson P. Kempsky, Deputy Atty. Gen. (argued), Evelle J. Younger, Atty. Gen. of Cal., Edsel W. Haws, Edward A. Hinz, Jr., Deputy Atty. Gens., Sacramento, Cal., for appellee.

Before HAMLEY and KILKENNY, Circuit Judges, and FERGUSON, District Judge.*

HAMLEY, Circuit Judge.

In this civil rights class action plaintiff, Robert Dorado, sought to convene a three-judge district court pursuant to 28 U.S.C. §§ 2281 and 2284, in an effort to obtain injunctive and declaratory relief concerning certain statewide procedures of the California Adult Authority (Authority). Defendant Henry W. Kerr, Chairman of the Authority, filed alternative motions to dismiss and for summary judgment, on three grounds: (1) plaintiff does not state a claim upon which relief can be granted, (2) the asserted federal questions are frivolous and insubstantial, and (3) the court lacked jurisdiction of the subject matter.

The district court, without taking steps to convene a three-judge court, dismissed the action with prejudice upon the ground that the complaint fails to state a claim upon which relief can be granted. Plaintiff, who is a California state prisoner and brings the action on behalf of himself and all others similarly situated, appeals.

Dorado's civil rights claims, based on 42 U.S.C. § 1983, challenge the procedures used by the Authority in making its annual review of prisoners' records and other materials for the purpose of determining whether the term of imprisonment should be fixed at less than the maximum, and whether parole should be granted or the prisoner should be discharged without parole. Specifically, he alleges that pursuant to statewide policies and regulations, and contrary to the Sixth and Fourteenth Amendments, the Authority uniformly: (1) denies prisoners the assistance of counsel at these annual hearings, (2) denies prisoners and their counsel access to the prisoners' cumulative records as a means of preparing for such hearings, (3) fails to require full records of the review pro-

---

* The Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation.

ceedings to be kept, and (4) fails to issue written decisions, based on the hearing records, which state the evidence relied upon in making its determinations as a result of these hearings.

Dorado first argues that it does not appear to a legal certainty that his constitutional claims, summarized above, are insubstantial and frivolous, and it was therefore error for a single district judge to dismiss, on the merits, this action in which the convening of a three-judge court was sought pursuant to 28 U.S.C. § 2281.

Before we reach that question, however, we must, *sua sponte,* consider the jurisdictional question of whether, even assuming that a substantial constitutional question is presented, this action is in other respects a proper one for three-judge disposition under section 2281.

Section 2281 provides that an injunction restraining the enforcement, operation or execution of any state statute by restraining the action of any state officer in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under state statutes, shall not be granted by any district court or judge thereof "upon the ground of the unconstitutionality of such statute" unless the application therefore is heard and determined by a district court of three judges under 28 U.S.C. § 2284.

■ Dorado has advised the court that he does not question the constitutionality of California's indeterminate sentencing law or any other state statute. However, the word "statute" as used in section 2281 comprehends all state legislative enactments, "including those expressed through administrative orders." Alabama Public Service Commission v. Southern Railway Co., 341 U. S. 341, 344, n. 3, 71 S.Ct. 762, 765, 95 L.Ed. 1002 (1951).[1]

■ In order to be included under section 2281, an administrative order, challenged on constitutional grounds, must be one of general application representing considered state policy. Marshall v. Sawyer, 301 F.2d 639, 644–645 (9th Cir. 1962); Hatfield v. Bailleaux, 290 F.2d 632, 635 (9th Cir. 1961). Dorado alleges that the Authority's "policies and regulations" which he here questions are of that kind. We do not agree. The procedures complained of are not, insofar as we have been advised, set forth in any formally adopted regulation or order. At most they represent the Authority's informally-established procedural policies.

■ The closest Dorado comes to establishing a formal basis for these procedural policies is to attach to his complaint, as an exhibit, a copy of a letter dated April 11, 1969, his attorney received from the Deputy Superintendent of the California Men's Colony, Los Padres, California. This letter refers to "long-standing Adult Authority policy" against permitting counsel to represent prisoners at parole consideration hearings. The letter also refers to considerations which have led the Authority to maintain the confidentiality of prisoners' cumulative records, and to advice received from the office of the state Attorney General authorizing that practice.[2]

1. *See also,* A. F. of L. v. Watson, 327 U.S. 582, 592, 66 S.Ct. 761, 90 L.Ed. 873 (1946); Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 292, 43 S.Ct. 353, 67 L.Ed. 659 (1923).

2. Dorado's memorandum filed in the district court referred to Adult Authority Resolution #171, adopted March 6, 1951 which, according to Dorado, provides that when parole is revoked the previously determined sentence is automatically rescinded, and the sentence is reset for the maximum. In his opening brief on this appeal, Dorado also refers to the Authority's "policy Statement No. 16, issued June 19, 1964," relating to the postponement of decision on the fixing of the term of imprisonment, and parole. But Dorado does not appear to question the validity of either Resolution #171, or Policy Statement No. 16, and neither of them pertain to the Authority's annual review proceedings described above, which proceedings are the only target of plaintiff's action.

Having in view the principle that section 2281 is to be closely construed to the end that only those cases which plainly fall in the class therein described be referred to three-judge courts (Marshall v. Sawyer, *supra*, 301 F.2d, at 645), we conclude that informally-adopted procedural policies and practices of this kind, although applied statewide, are not embraced within section 2281. It follows that, however substantial the federal questions may be, a district court of three judges, pursuant to 28 U. S.C. §§ 2281 and 2284, would not have had jurisdiction. It was accordingly appropriate for the district court to proceed to the merits of the motions to dismiss and for summary judgment.

The judgment on appeal dismisses the action on the ground that the complaint fails to state a claim upon which relief can be granted. While this language seems to be responsive to defendant's motion to dismiss under Rule 12(b), F.R.Civ.P., matters outside the pleading were presented to and not excluded by the court. The judgment must therefore be regarded as one for summary judgment. *See* Rule 12(b), *supra*.

With regard to the merits of the district court judgment, Dorado first contends that it should be set aside because, under the Sixth Amendment, made applicable to the states under the Fourteenth Amendment, California prisoners have a right to counsel at Authority sessions at which the fixing of sentences and the granting or denial of parole are considered.

Under California Penal Code, sections 1168 and 1168a, provisions of the state indeterminate sentence law, the trial judge has authority to sentence defendants convicted of a public offense, to imprisonment in a state prison. But the court, in imposing the sentence, is not permitted to fix the term or duration of the period of imprisonment. The Authority, by statute, has exclusive jurisdiction to fix, within the minimum and maximum limits prescribed by law for the particular offense, the length of time a prisoner must serve. Cal.Penal Code, §§ 5077, 3020, 3023. In re Schoengarth, 66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200, 204 (1967). It also has exclusive jurisdiction to grant or deny paroles. Cal.Penal Code, § 3040.

The judge's sentence thus amounts to a minimum and a maximum sentence for the crime in question, but with power reserved to the Authority to determine and redetermine, within those limits, the actual duration of imprisonment, and to grant or deny parole. It follows that, in determining sentences, and in granting or denying paroles, the Authority engages not in judicial action, but in administrative action. In re Schoengarth, *supra*, 57 Cal.Rptr. at 606, 425 P.2d at 206. *See* Sturm v. California Adult Authority, 395 F.2d 446 (9th Cir. 1967). *Cf.* concurring opinion of Judge Browning in *Sturm*. Having this distinction in mind, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) relied upon by Dorado, is not in point. *Mempa* involved proceedings before a court for the revocation of probation and the imposition of initial sentence.

In a long line of cases this court has held that there is no due process right to counsel at sessions of the Authority at which the revocation of parole is administratively considered.[3] On like

---

No question is here presented concerning Authority procedure in refixing or redetermining sentences after revocation of parole. While plaintiff refers to the "resetting" of sentences at the maximum in the event parole is denied, this amounts only to the retention of the maximum provided by statute, as fixed by the trial court.

We therefore express no view concerning procedures followed by the Authority in redetermining a sentence immediately after revocation of parole. It is an established principle of federal adjudication that a constitutional question is not to be decided in advance of the necessity for its decision. *See* Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 284, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).

3. Ellhamer v. Wilson, 445 F.2d 856 (9th Cir. 1971); Lincoln v. California Adult

reasoning we conclude that due process does not entitle California state prisoners to counsel at Authority sessions called to determine, administratively, the length of imprisonment, and to grant or deny parole. *See* Ellhamer v. Wilson, note 3 *supra*, reversing, 312 F.Supp. 1245 (N.D.Cal.1969).

Dorado also argues that, under the Due Process Clause of the Fourteenth Amendment, California prisoners are entitled to certain procedures not now secured to them at the annual administrative review sessions of the Authority. He contends that, at these sessions, he and the class he represents should be afforded, in addition to the assistance of retained counsel, access to their respective cumulative records in possession of the Authority; and that the Authority should be required to keep formal records of its sessions and to issue written opinions which state the record evidence relied upon in reaching its decisions.

In support of these assertions, Dorado relies primarily on the doctrines announced in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and other similar cases. Dorado argues that the procedural safeguards here in question have been held in *Goldberg* to be constitutionally required even in such administrative proceedings as those carried on by the Authority, and even where there is no right to appointed counsel.

The California courts have authoritatively construed the indeterminate sentencing statute of the state. In addition, the Adult Authority has promulgated resolutions under the statutes.[4] We are convinced that the statutory scheme which emerges distinguishes the present case from those relied upon by Dorado.

■ Under California law, after the court pronounces an indeterminate sentence, and until the Authority fixes the sentence within the indeterminate limits, the prisoner is deemed to be serving the maximum sentence for the crime in question, as fixed by statute. The legally convicted prisoner has no vested right to determination of his sentence at less than maximum, nor to parole. In re Schoengarth, *supra*, 57 Cal.Rptr. at 604, 425 P.2d at 204; In re McLain, 55 Cal. 2d 78, 9 Cal.Rptr. 824, 357 P.2d 1080, 1085 (1960).

■ The determination of sentence by the Authority at less than the maximum is a matter of complete discretion, not of right. This court has noted that a major purpose of the indeterminate sentencing law is "to permit individual treatment of offenders, according to the best judgment of the authority." Sturm v. California Adult Authority, *supra*, 395 F.2d at 448. The Authority, we believe, is and must be free to weigh all the tangible and intangible factors which determine whether a particular prisoner is ready to return to society before his maximum term has been served. No rigid or even measurable criteria dictate that a particular individual must have his sentence set at less than the maximum term. These same principles apply to the granting of paroles.

■ By contrast, in Goldberg v. Kelly, *supra*, the Supreme Court said that the social welfare benefits at issue were "a matter of statutory entitlement for persons qualified to receive them." 397 U.S. at 262, 90 S.Ct. at 1017. The Court also likened such benefits to property rights. *Id.* at note 8. The distinction between proceedings involving such welfare benefits and the proceedings of the Adult Authority is obvious. The other

Authority, 435 F.2d 133, 134 (9th Cir. 1970); Mead v. California Adult Authority, 415 F.2d 767, 768 (9th Cir. 1969); and other cases cited therein.

4. As noted above, Dorado does not dispute the validity of the statutes or res-

olutions. And the interpretive gloss put on these statutes by the California courts has been held not to present a federal question. Sturm v. California Adult Authority, 395 F.2d 446, 448 (9th Cir. 1967).

cases upon which Dorado relies may be similarly distinguished. It follows that there is no right under the Due Process Clause to the procedures for which the appellant contends.

Appellant Dorado devotes much of his brief to the argument that his contentions, if accepted, would improve the efficacy of the California indeterminate sentencing and parole program. This argument is, however, irrelevant. The question is not whether the reforms for which he contends would be wise or desirable from a policy standpoint, but whether they are required under the Constitution. We hold that they are not.

Moreover, we do not agree that Dorado's position, if sustained, would have the beneficent results he predicts. In effect, he would convert the presently flexible annual administrative sessions of the Authority now afforded each prisoner into judicial hearings with much of the formality of court proceedings. He indicates that, were such hearings available to him, he would have a basis for seeking a judicial review of the Authority's action. The result would be to change, completely, the character of California's indeterminate sentence procedure, bringing it into the state court system.

The magnitude of the judicial load which would thus be added to the presently heavily-burdened California court system is indicated by the statistics set out in the concurring opinion of Justice Mosk in In re Tucker, 5 Cal.3d 171, 95 Cal.Rptr. 761, 486 P.2d 657 (1971). Justice Mosk points out that there is a potential of thirty-two thousand appearances annually before the Authority in parole proceedings. 95 Cal.Rptr. at 767, 486 P.2d at 663. Most of these appearances also involve the determination of prison terms.

This is not to say that the action of the Authority in determining sentences and granting or denying paroles is completely beyond judicial surveillance. In California, the existence of good cause to revoke a parole may be challenged on habeas corpus. In re Tucker, 5 Cal.3d 171, 95 Cal.Rptr. 761, 486 P.2d 657, 659 (1971). We think it probable that a substantial claim that the determination of a particular sentence, or the denial of parole, had been infected with constitutionally impermissible discrimination would be similarly entertained in state habeas corpus proceedings.

In his complaint, and also here in the record, we find a detailed description of Dorado's personal confrontations with the Authority through the years. We have not found it necessary to set out these facts in the opinion, since Dorado seeks neither his release nor money damages in this action.

Affirmed.