**Michael Frederick LINGO, Petitioner,**

v.

**Walter T. STONE, Respondent.**

**No. C–75–0028–CBR.**

United States District Court,
N. D. California.

Oct. 16, 1975.

James Moore King, San Jose, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., Jack R. Winkler, Chief Asst. Atty. Gen., Edward P. O'Brien, William D. Stein, Ina L. Gyemant, Deputy Attys. Gen., San Francisco, Cal., for respondent.

## ORDER OF DISMISSAL

RENFREW, District Judge.

Petitioner, a prisoner in state custody at the Correctional Training Facility, Soledad, California, filed this petition for a writ of habeas corpus setting forth two grounds for relief: (1) various allegedly unconstitutional conditions of his confinement and (2) the allegedly unconstitutional refusal of the California Adult Authority to grant him parole. By order dated April 25, 1975, the Court dismissed petitioner's claims of unconstitutional treatment while in confinement as repetitious of those in his pending civil rights action, No. C–73–2290–CBR, and ordered respondent to show cause why the writ should not issue on the grounds that petitioner was unconstitutionally denied parole. Respondent filed his return on May 20, 1975; peti-

tioner's traverse was filed on July 28, 1975.

Petitioner was arrested on May 18, 1965, and charged with two counts of second degree burglary, pursuant to California Penal Code § 459. He was convicted and sentenced on January 14, 1966, to concurrent terms of from six months to fifteen years. On September 16, 1970, petitioner was paroled. Initially he adjusted well to parole, but on April 22, 1971, petitioner was arrested for petty theft, possession of dangerous drugs, and other charges. A parole hold was placed on him but was subsequently dropped after arrangements were made for petitioner to serve as an informer for the Los Angeles Sheriff's Office Narcotic Bureau. In January, 1972, petitioner pled guilty to the drugs possession charge; all other charges were dropped and petitioner was placed on probation after receiving a six-month sentence with credit for time served.

Meanwhile, on December 23, 1971 petitioner was arrested for shoplifting. He pled guilty to petty theft and was sentenced to serve six months in the county jail. Petitioner escaped from jail on June 12, 1972, and remained at large until August 25, 1972, when he was arrested for attempting to pass forged medical prescriptions in violation of California Business & Professional Code § 4390. He was sentenced to a term of one year for escape, forgery and probation violation, and a parole hold was placed on him. In September, 1973, after completion of his county jail term, petitioner's parole was revoked and he was returned to prison. (Since October 3, 1973, petitioner has been assigned to X-wing at Soledad, a protective custody unit. Petitioner apparently feared for his personal safety when confined with the general population in prison because of his prior status as a police informer.) At a parole hearing held in September, 1974, petitioner's application for parole was denied. Petitioner's application for review of the Board's decision was denied on October 15, 1974. The instant petition was filed on January 7, 1975.

In denying petitioner's September, 1974 request for parole, the Parole Board indicated six reasons for the denial. These were as follows:

"Serious criminal history including 3 felony commitments.

Failure under parole supervision including violent behavior and weapon involvement.

History of involvement with weapons.

Clinical assessment not supportive for parole.

Staff reports suggest satisfactory behavior but little progress in understanding, insight or change.

No significant program involvement to resolve evident problems in emotional and/or criminal areas."

In its order of April 25, 1975, the Court stated that certain of these reasons caused it concern, specifically those relating to "violent behavior", "weapon involvement", "clinical assessment not supportive of parole", and "No significant program involvement". The Court's order emphasized the wide latitude within which the California Adult Authority may constitutionally exercise its discretion under the state's indeterminate sentencing law to grant or deny parole, *see Dorado v. Kerr*, 454 F.2d 892, 897 (9 Cir. 1972); *Sturm v. California Adult Authority*, 395 F.2d 446, 448 (9 Cir. 1967), but also stressed that the exercise of that discretion is not immune from constitutional scrutiny. The Court noted that no precise standards for undertaking that scrutiny have been delineated, but adopted the sensible and workable formulation set forth in Judge Browning's concurring opinion in *Sturm, supra,* 395 F.2d at 449: a denial of parole may contravene the Fourteenth Amendment if it is "arbitrary, basically unfair, or invidiously discriminatory". Because the Court

found that petitioner's allegations raised a possibility of arbitrariness by the Adult Authority, it ordered respondent to show cause why the writ of habeas corpus should not issue.

The Court has carefully reviewed respondent's return, his memorandum of points and authorities, and the exhibits attached thereto. Essentially, respondent relies heavily on the broad discretion courts customarily accord a parole board charged with the difficult task of deciding whether a prisoner is ready to return to society. In addition, respondent points to portions of the record which arguably support the Adult Authority's decision to deny petitioner's request for parole, and contends that the record therefore establishes that the decision of the Authority was not arbitrary. Respondent has submitted only a few documents to supplement the extensive record filed by petitioner. None of the additional documents significantly alters the factual record. Thus, the record before the Court now is virtually identical to that which previously caused the Court concern and motivated it to issue the order to show cause.

It is axiomatic that a court should not substitute its own discretion for that of the Adult Authority in deciding whether parole should be granted. The record here indicates that there was some support for the Authority's decision to deny petitioner's parole application and, therefore, the denial was not so arbitrary or so basically unfair as to violate petitioner's constitutional rights. Nevertheless, the Court wishes to emphasize that it is gravely troubled by the conclusory language used by the Parole Board in denying both petitioner's parole application and his application for review. While there is support in the record for each of these reasons, at times the Parole Board used words so emotive and so totally out of proportion to the underlying facts as to raise serious doubts in the Court's mind concerning the Board's objectivity and impartiality.

The Court does not feel it necessary to discuss each of the items which have generated these serious doubts, given its decision to deny the instant petition. However, it would point out, by way of example, that to characterize petitioner's past conduct as "violent behavior" which presents "a real concern" for future public protection when, in fact, all petitioner is said to have done is kick a police officer in the shins while lying on a hospital table and spit in the attending physician's face; or to state that there has been "no significant program involvement to resolve evident problems in emotional and/or criminal area", when, in fact, petitioner actively participated in three of the four programs available in Soledad's X-wing—the fourth program being unsuitable for petitioner—is to strain both reason and the ordinary usage of words nearly to the breaking point. A prisoner applying for parole deserves a more honest and accurate assessment of his application than this.

Although this is a close case, the Court concludes that there was sufficient basis, although barely so, for the Adult Authority's decision to deny petitioner parole and that petitioner's constitutional rights have therefore not been infringed. Accordingly,

It is hereby ordered that the habeas corpus petition herein is dismissed pursuant to 28 U.S.C. § 1915(d).