Thomas Carl HESTER, Petitioner,

v.

Walter E. CRAVEN, Warden, Respondent.

Civ. No. 70–832–F.

United States District Court,
C. D. California.

Feb. 17, 1971.

Robert Payson, Beverly Hills, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., Los Angeles, Cal., William E. James, Asst. Atty. Gen., Jeffrey C. Freedman, Deputy Atty. Gen., for respondent.

## MEMORANDUM OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS

FERGUSON, District Judge.

Petitioner, a California state prisoner, seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his present incarceration in Folsom Prison. He was convicted of first degree robbery (California Penal Code § 211) in Los Angeles Superior Court on November 21, 1958, and sentenced to serve an indeterminate sentence of from five years to life. It is conceded that prior to bringing this action the petitioner fully exhausted his state remedies on the issues presented here.

This case centers around the operation of the California Indeterminate Sentence Law (California Penal Code § 1168). The operation of that law is basically as follows:

A criminal defendant is sentenced to state prison by a judge, not for a fixed term of years, but for "the term prescribed by law". Each offense in the California Penal Code sets forth a minimum and maximum term. For example, the sentence for a robbery conviction is a minimum term of five years and a maximum term of life imprisonment. While in prison, the California Adult Authority, after study and evaluation of the prisoner by psychiatrists, medical doctors, social workers and others, fixes the length of sentence within the range permitted by the legislature. An example would be ten years, with the last four on parole. If parole has not been violated, then upon serving the years so fixed, the defendant is released from his sentence. If he is charged with a parole violation, he is then returned to prison and a hearing is provided for the purpose of determining whether parole has been violated. If it is found that it has been violated, then parole is revoked.

However, instead of requiring the defendant to remain in prison for the remainder of the fixed term of his sen-

tence, the Adult Authority has adopted Resolution 171. That Resolution provides that "[w]hen paroles are cancelled, suspended, and/or revoked, the previous action fixing term will be rescinded * * and the prisoner shall be considered as serving the maximum term * * *." Thus, without further hearing his sentence is automatically refixed at the maximum.

This action does not challenge the procedure followed to revoke parole and thereby require a parolee to be imprisoned for the remainder of his fixed term. Furthermore, it does not challenge the power of the Adult Authority to refix a sentence when parole has been revoked. The action is limited, within the framework of the facts of this case, to the procedure required by the Constitution before the Adult Authority may exercise the power to refix a sentence.

On August 23, 1961, the Adult Authority fixed petitioner's term at six and one-half years and provided that the last three years and two months would be served on parole. As determined, this term would have terminated in June, 1964. However, a notice of complaint was issued on May 5, 1963, charging the petitioner with three parole violations: (1) changing residence without permission; (2) associating with a parolee; and (3) possession of a firearm. On April 25, 1963, petitioner's parole was cancelled by the Adult Authority and his term was refixed at the maximum. The record of the hearing held by the Adult Authority on June 3, 1963, indicates that the petitioner pleaded guilty to the second charge, and not guilty to the first and third charges. He was found guilty of counts one and three. Petitioner does not challenge this redetermination.

Petitioner's term was then refixed at five and one-half years on April 12, 1965. This term, as refixed, would have terminated on May 21, 1967. Parole was granted effective October 4, 1965. On April 25, 1966, a notice of complaint was again issued. It charged petitioner with five parole violations: (1) changing residence without the knowledge or approval

of his parole agent; (2) possession and control of a firearm; (3) maintenance of a common-law relationship with a woman after having been specifically instructed by his parole agent to discontinue the association; (4) commission of the crime of arson; and (5) commission of the crime of willful cruelty to children.

At a hearing held by the Adult Authority, petitioner pleaded not guilty to all counts. Petitioner was not permitted to be represented by counsel at this hearing, even though he testified and answered numerous questions propounded by the Authority. Nor was petitioner given the opportunity to question the persons who supplied the information relied upon by the Authority. In fact, no witnesses were called to give oral testimony in support of the charges against petitioner. The evidence against the petitioner consisted solely of a written report submitted by his parole officer.

On May 16, 1966, petitioner was found "guilty" of counts one and three. Counts four and five were dismissed; count two was submitted for more complete information and later dismissed. Parole was revoked and petitioner's term was automatically refixed at the maximum—life imprisonment—pursuant to Adult Authority Resolution 171.

It is from this redetermination decision that petitioner seeks relief. Petitioner claims that:

(1) The California Adult Authority's use of information to redetermine his sentence without allowing him to confront and cross-examine the witnesses against him violated his constitutionally protected right to due process.

(2) The California Adult Authority's failure to advise him of his right to remain silent, and that any statements made by him could be used against him, as well as being compelled to incriminate himself by answering questions and being required to enter a plea, violated his right against self-incrimination.

Petitioner states very emphatically that he is not challenging his lack of counsel at the hearing. For this reason, this issue is not considered. Due to the court's determination of the first claim, it is unnecessary to reach petitioner's second contention.

Shortly after this petition was filed, an order to show cause was issued and an attorney was appointed to represent petitioner. Briefs were filed by both sides and oral argument was heard. A federal evidentiary hearing on petitioner's claims was not held since the parties stipulated to the relevant facts, rendering a hearing unnecessary. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The stipulation of facts, the briefs and the oral presentations are all part of the record herein and have been fully considered by this court.

The constitutionality of various aspects of the California Adult Authority parole revocation procedure has been litigated in a number of cases. To date, these questions have been unanimously decided in favor of the constitutionality of the parole revocation procedure and the power to refix sentences. However, no case has directly considered the matter presented by the petitioner.

The issue presented here is a very narrow and specific one, and a careful examination of the cases reveals that it has not been resolved despite certain dicta which could be read to preclude petitioner's claim. Directly stated, the issue is: Whether the California Adult Authority, consistent with the Due Process Clause of the Fourteenth Amendment, can redetermine the sentence of a parolee to a longer term based upon a factual determination of events which occurred outside the prison without giving the parolee the right to confront and cross-examine the witnesses against him.

The concurrence of three essential factors distinguishes this case from most other cases in this area: (1) the petitioner is challenging the procedure followed to arrive at the redetermination decision and not the decision to revoke parole nor the power to redetermine; (2) that decision was necessarily based upon a factual determination of events which took place outside the prison; and (3) the petitioner's attack is based upon his Fourteenth Amendment right to due process, which is applicable to both civil and criminal proceedings.

It is well settled that under present Ninth Circuit case law there is no federally protected right to a hearing in a mere parole revocation proceeding. It must be kept in mind that that issue is not the issue here. The primary Ninth Circuit case in that area is Williams v. Dunbar, 377 F.2d 505 (9th Cir.), cert. denied, 389 U.S. 866, 88 S.Ct. 131, 19 L.Ed.2d 137 (1967). *Williams* involved a suit for damages under the Civil Rights Act wherein the appellant alleged that his constitutional right to due process had been violated by the state's failure to provide a court hearing at the time his parole was revoked. The court affirmed the trial court's dismissal of the complaint, stating that no federal question was presented.

The court later faced a similar issue in Eason v. Dickson, 390 F.2d 585 (9th Cir. 1968). Eason brought a suit under the Federal Civil Rights Act seeking damages and injunctive relief. He made several contentions. First, he asserted that it was a denial of due process to revoke his parole without a proper hearing. The court rejected this contention, quoting *Williams*. Eason also challenged the legality of the redetermination on the ground that it constituted "multiple punishment". The court reasoned that the redetermination was not a "penalty" and, therefore, not improper. In the instant case, the right to redetermine is not in issue. Finally, the court dismissed Eason's equal protection argument.

In Sturm v. California Adult Authority, 395 F.2d 446 (9th Cir. 1967), appellant and a codefendant were convicted of first degree robbery and sentenced to a term of from five years to life. Following two infractions of prison rules, ap-

pellant's sentence was redetermined for a longer term. While appellant remained incarcerated, his codefendant was discharged. Appellant first argued that he had been denied substantive due process because the Adult Authority, by redetermining his sentence after it had once been fixed, acted outside its statutory authority. The court responded by noting that the "California courts have clearly recognized the statutory authorization for the Adult Authority to redetermine a sentence". 395 F.2d at 448. Judge Browning's concurring opinion makes it clear that the court was not considering the issue of *procedural* due process as it pertains to the redetermination. 395 F.2d at 449–450.

In Dunn v. California Department of Corrections, 401 F.2d 340 (9th Cir. 1968), the petitioner sought habeas corpus, contending that the dismissal of the criminal case involving marihuana made it impossible for the Adult Authority to legally revoke his parole for possessing the marihuana involved in that case. He further contended that the Authority, having once determined not to revoke his parole because of his use of dexedrine, could not again consider it as a ground for revoking parole. The court ruled that the Adult Authority could revoke parole on such evidence as it deems reasonable unless such action is arbitrary or capricious.

The court considered the equal protection argument again in Bennett v. People of State of California, 406 F.2d 36 (9th Cir. 1969). It held that the allegations by the state prisoner that he was discriminated against by the Authority's action in releasing other individuals but not him, failed to state a cause of action under the Civil Rights Act (42 U.S.C. § 1983).

Three recent per curiam decisions by the Ninth Circuit have disposed of civil rights suits in this area. In Worley v. Calif. Dept. of Corrections, 432 F.2d 769 (9th Cir. 1970), the court affirmed the dismissal of a civil rights action. Worley had contended that (1) to revoke his parole without a judicial-type hearing constituted a denial of due process; (2) to "refix" his sentence at the maximum constituted double jeopardy; and (3) Adult Authority Resolution 171 constituted a bill of attainder.

Similarly, the court, in Alexander v. Calif. Ct. Director of Correction, 433 F.2d 360 (9th Cir. 1970), affirmed the dismissal of a civil rights claim based upon the plaintiff's contention that the Adult Authority's power to redetermine his sentence violates his constitutional rights. In Carter v. California Adult Authority, 433 F.2d 978 (9th Cir. 1970), the plaintiff argued that a redetermination of his sentence subjected him to cruel and unusual punishment and double jeopardy.

Finally, in Lincoln v. California Adult Authority, 435 F.2d 133 (9th Cir. 1970), the court rejected an argument that Resolution 171 was *ex post facto* as it was applied to the plaintiff. The court also noted that the constitutionality of the California Adult Authority parole revocation procedure is well settled.

In none of those cases did the court rule on the issue presented here, that is, the redetermination of a sentence to a longer term based upon a factual determination of events which occurred outside the prison without providing the parolee the right to confront and cross-examine witnesses.

The only discussion of the specific point in issue here is found in Judge Browning's concurring opinion in Sturm v. California Adult Authority, 395 F.2d 446, 449 (9th Cir. 1967). In discussing the redetermination in that case, Judge Browning stated that the "action of the Board was State action. It deprived appellant of liberty; if it did so 'without due process of law,' * * * it offended the Fourteenth Amendment." Judge Pope alluded to this problem in Peinado v. Adult Authority of Department of Corrections, 405 F.2d 1185, 1186 (9th Cir., 1969), when he stated: "I have an uneasy feeling as to whether, wholly apart from any Civil Rights Act, the plaintiff might be entitled to a hearing

and to call witnesses just as a matter of due process."

Thus, it is clear that given a proper factual situation the California procedures for redetermination of sentences raise substantial federal constitutional questions. This is confirmed by Conway v. Calif. Adult Authority, 396 U.S. 107, 90 S.Ct. 312, 24 L.Ed.2d 295 (1969). There petitioner sought habeas corpus, asserting that the Adult Authority had extended his term beyond the date tentatively set for his discharge solely because he refused to admit his guilt. The Adult Authority filed no response to the petition for habeas corpus in the district court, and in response to the petition for *certiorari* merely argued that petitioner's claim was legally insubstantial. *Certiorari* was granted to consider petitioner's contention that his privilege against compulsory self-incrimination had been infringed. However, in the Adult Authority's brief on the merits it presented documentary evidence that the actual facts did not present the issue for which *certiorari* was granted, and *certiorari* was dismissed as improvidently granted. The sentence in *Conway* was redetermined while the petitioner was still in prison for violation of prison rules.

The Due Process Clause of the Fourteenth Amendment provides that: "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *." The Supreme Court has, in numerous cases, considered the procedural rights which should be guaranteed individuals in a wide variety of circumstances. In considering the procedural safeguards of confrontation and cross-examination, the Court, in Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959), stated that:

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination."

The court there was considering the administrative revocation of a security clearance by procedures similar to those employed by the Adult Authority in redetermining the petitioner's sentence. No witnesses were presented and the Authority relied on confidential reports compiled by an investigative agency. However, despite this general language, the court avoided ruling on the constitutionality of such procedures. It held that where neither the President nor Congress explicitly authorized the procedure, the secretaries of the armed forces were not authorized to deprive a person of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination.

The Court made it clear in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), that the various administrative agencies may be governed by different requirements.

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conduct-

ed, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." 363 U.S. at 442, 80 S. Ct. at 1514–1515.

In the most recent due process case, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Court noted that:

"It is significant that most of the provisions of the Bill of Rights are procedural, for it is procedure that marks much of the difference between rule by law and rule by fiat." 400 U.S. at 436, 91 S.Ct. at 509.

In concluding that the Wisconsin statute violated procedural due process, the Court stated that "[o]nly when the whole proceedings * * * are aired can oppressive results be prevented." 400 U.S. at 437, 91 S.Ct. at 510.

In *Hannah*, the Court stressed the importance of the distinction between adjudicatory and investigatory proceedings in determining the applicability of procedural due process. It stated that where the agency made determinations of a quasi-judicial nature, the parties should be accorded the traditional safeguards of a trial. Whereas, when the agency conducts a non-adjudicative, fact-finding investigation such rights do not generally apply. The Court recently reaffirmed the adjudicatory-investigatory distinction in Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The California Adult Authority, in making a decision to redetermine a sentence to the maximum, exercises a function very much akin to making an official adjudication of criminal culpability and involving far more than a mere fact-finding investigation. It should be noted that members of the Adult Authority have been held immune from suits for damages under the Civil Rights Act on the ground that they perform "quasi-judicial functions". Silver v. Dickson, 403 F.2d 642 (9th Cir. 1968).

■ It can no longer be argued that a prisoner loses all constitutional rights by virtue of his criminal conviction. Under the appropriate circumstances, state prisoners retain the right to the observance of procedural due process when substantial individual interests are at stake. *See, e. g.,* Nolan v. Scafati, 430 F.2d 548 (1st Cir. 1970); United States ex rel. Schuster v. Herold, 410 F.2d 1071 (2d Cir. 1969), cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1970); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968).

■ Two elements must be present for the Fourteenth Amendment Due Process Clause to apply. There must be both state action and a deprivation of "life, liberty, or property". Since the redetermination of sentence clearly involves state action, the only question is whether the procedure followed by California deprived the parolee of a protected right.

■ The state argues that since the petitioner was originally sentenced to five years to life, any determination of his sentence shorter than life is a privilege, an act of governmental grace, and thus he has no basis for demanding procedural safeguards when his sentence is redetermined to a longer period of time. According to this argument, since the Adult Authority could have determined his sentence at life, it can set any limitations it desires on a shorter sentence without invoking the requirements of procedural due process.

This argument is not persuasive. While the petitioner did not have a right to have his sentence determined at less than life, he does have a right, once it is so determined, to have his sentence

terminate on that date absent some change which justifies redetermination. This is clear from numerous decisions by the California Supreme Court, which require that sentence redeterminations be made only for "cause". *See, e. g.,* In re Schoengarth, 66 Cal.2d 295, 302, 57 Cal. Rptr. 600, 425 P.2d 200 (1967). Similarly, numerous Ninth Circuit cases hold that the action of the Adult Authority must not be "arbitrary and capricious". *See, e. g.,* Dunn v. California Department of Corrections, 401 F.2d 340, 342 (9th Cir. 1968). Furthermore, where "a new finding of fact" such as this must be made, procedural due process requires that the defendant be given a right to confront and cross-examine witnesses against him. Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed. 2d 326 (1967).

In In re McLain, 55 Cal.2d 78, 9 Cal. Rptr. 824, 357 P.2d 1080 (1960), the Adult Authority had fixed the sentence and granted parole to commence at a future date. Before that date arrived, the Authority rescinded its action and redetermined the sentence due to numerous disciplinary infractions which occurred while the petitioner was still incarcerated.

The court noted the twofold nature of the order—"revoking parole and redetermining sentence"—and observed that "good cause must in fact exist" for an order redetermining sentence.

> "Even though a legally convicted person has no vested right to the determination of his sentence at less than maximum, his liberty, or denial thereof, may not be made to turn upon mere whim, caprice, or rumor. Thus in redetermining sentence, although no 'cause' need be stated in the order, the conclusion is inescapable that such action cannot be taken in the absence of good cause." 55 Cal.2d at 87, 9 Cal. Rptr. at 830, 357 P.2d at 1086 (citations omitted).

The court concluded that good cause did, in fact, exist and that the provisions for redetermining sentence did not violate due process because of the absence of a requirement for a hearing.

It should be noted that determination of sentence at less than the maximum is the almost universal disposition in cases of this type. Far from being an unusual, special favor granted to a particular individual by a forgiving government, it is the usual mode of disposition and the penal system depends upon it as much as the inmates do.

The weakness of relying upon the right-privilege distinction in deciding due process questions was pointed out by the Supreme Court in Cafeteria and Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). This case involved summary denial to the plaintiff of access to the place of her former employment. The Court stated that:

> "This question cannot be answered by easy assertion that, because she had no constitutional right to be there in the first place, she was not deprived of liberty or property by the Superintendent's action. 'One may not have a constitutional right to go to Baghdad, but the Government may not prohibit one from going there unless by means consonant with due process of law.'" 367 U.S. at 894, 81 S.Ct. at 1748.

This position was reaffirmed in Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970), when the Court stated that "[t]he constitutional challenge cannot be answered by an argument that public assistance benefits are 'a "privilege" and not a "right."'" *See also,* Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ A second reason why the state's argument is unpersuasive is that the government must abide by basic principles of fairness when dispensing, or revoking, a privilege. The recipient of governmental aid is entitled to due process protection even if the aid is an exercise of governmental largesse. *See, e. g.,*

Willner v. Committee on Character & Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L. Ed.2d 224 (1963) (a license to practice law). In fact, according to *Kelly*, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." 397 U.S. at 269, 90 S.Ct. at 1021. Thus it is clear that the Supreme Court has refused to rely upon labels to determine constitutional issues of this type.

█ It has been suggested by the respondent that the decision to redetermine is prognostic and since it is based upon subjective factors involving such intangibles as the extent of the petitioner's rehabilitation and his ability to get along in society, the procedure ought not to be subject to due process requirements. This view of the redetermination procedure is inconsistent with the facts of this case. Pursuant to Resolution 171, redetermination automatically follows parole revocation. And parole revocation, in the present instance, was based solely upon a determination of whether petitioner was "guilty" of any of the five parole violations charged in the parole report.

The central thesis of that argument seems to be an assertion that the redetermination decision is civil or administrative rather than criminal. Regardless of this distinction, the petitioner is entitled to due process procedural guaranties. "[C]ommitment proceedings whether denominated civil or criminal are subject * * * to the Due Process Clause." Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 1217, 18 L.Ed. 2d 326 (1967). The Supreme Court considered and rejected a similar argument in an analogous area in the case of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527 (1967). In that case the Court pierced the benevolent veneer of *parens patriae*, looked at the substance of juvenile court proceedings and their consequences, and determined that the "[f]ailure to observe the fundamental requirements of due process has resulted in instances, which might have been avoided, of unfairness to individuals and inadequate or inaccurate findings of fact and unfortunate prescriptions of remedy." 387 U.S. at 19–20, 87 S.Ct. at 1439.

The impact of *Gault* in analogous areas was emphasized by the Tenth Circuit's decision in Heryford v. Parker, 396 F.2d 393 (10th Cir. 1968). This case involved a habeas corpus proceeding brought by a mother on behalf of her son who had been committed to a state training school for the feeble-minded and epileptic. The court noted that:

"[W]e have a situation in which the liberty of an individual is at stake, and we think the reasoning in Gault emphatically applies. It matters not whether the proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration— whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent—which commands observance of the constitutional safeguards of due process. Where, as in both proceedings for juveniles and mentally deficient persons, the state undertakes to act in parens patriae, it has the inescapable duty to vouchsafe due process, * * *." 396 F.2d at 396.

It is at this point that the concurring opinion of Judge Browning in Sturm v. California Adult Authority, 395 F.2d 446, 449 (9th Cir. 1967), becomes extremely pertinent:

"No doubt the State of California may adopt a system of indeterminate sentencing and create a non-judicial agency to administer the system without violating the Constitution of the United States. But the existence of this power does not imply a further power in the State to immunize its acts, through its administrative agen-

cy, from the strictures of the Fourteenth Amendment.

"The judicial imposition of a life sentence upon appellant is no more than a legislatively mandated device for transferring the sentencing function from the State court to the State administrative agency with a grant of jurisdiction over appellant's person for a period sufficiently long to enable the agency to perform its functions under the State's indeterminate sentencing law. Use of that device cannot be seized upon as a means to validate whatever action the administrative agency might subsequently choose to take, no matter how seriously the appellant might be injured, and without regard to whether the agency's action was arbitrary, basically unfair, or invidiously discriminatory.

"When the California Adult Authority entered its order of July 3, 1962, refixing appellant's sentence at ten and one-half years, it substantially extended the prison term which appellant would be required to serve. Appellant's challenge to the constitutionality of that order cannot be answered by pretending that nothing really occurred, merely because a State court, five years earlier, had entered an order fixing appellant's maximum term at life. The action of the Board was State action. It deprived appellant of liberty; if it did so 'without due process of law,' or denied appellant 'the equal protection of the laws,' it offended the Fourteenth Amendment."

It must be noted that the Supreme Court refuses to decide constitutional questions such as this on the basis of "labels". Instead, the Court looks at the following elements:

"The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, * * * the balance of hurt complained of and good accomplished * * *." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817 (1951) (Justice Frankfurter, concurring).

There can be no question that the precise interest involved here is liberty. But for the redetermination, the petitioner would not now be incarcerated. This decision to redetermine the petitioner's sentence to a longer term was based upon a factual determination of events which occurred outside the prison. It is true that, technically speaking, the redetermination occurs automatically following parole revocation. However, the Adult Authority cannot isolate from judicial review the decision to redetermine sentences by the procedural device of making it an automatic occurrence upon the happening of some other event. It is clear that the redetermination must be based upon "cause", and that "cause" in this case must be the factual conclusions which were reached at the parole revocation hearing.

Factually this setting presents the classic example of the reasons for requiring due process at a factual hearing. Five violations were alleged in the parole report. Petitioner denied each and every one of them. Although the evidence against him was based on the written report of his parole officer, two violations were immediately dismissed for lack of supporting evidence and a third was dismissed after further investigation. Petitioner was found "guilty" of the other two violations, and based upon this finding his sentence was redetermined to the maximum.

The application of due process procedural requirements to the factual determination underlying the decision to redetermine a sentence does not compel the state to abandon any of the substantive benefits of the indeterminate sentence. Indeterminate sentencing is a very humane and well-intended method of sentencing. There is no reason why the application of due process requirements should interfere with the many advantages of this method of sentencing.

Insofar as rehabilitation is the purpose of indeterminate sentencing, the addition of this constitutionally required element should not constitute a detriment. Surely it will assist the rehabilitation of the individual if he knows that the decisions of the Adult Authority are based upon an objective and thorough examination of the facts of his case.

The court concludes that the petitioner was deprived of his Fourteenth Amendment constitutional right to due process when the Adult Authority refused to allow the petitioner to confront and cross-examine the witnesses against him at the factual hearing concerning events which took place outside the prison and upon which his sentence redetermination was based. As a result, the redetermination of petitioner's sentence was invalid and, since his sentence under the prior determination terminated on May 21, 1967, he is improperly incarcerated.

Pursuant to the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, this memorandum opinion shall constitute the findings of fact and conclusions of law of the court.

Pursuant to the provisions of Rule 58, a judgment shall be entered as follows:

"1. The petitioner is being held in custody by the respondent and the State of California in violation of the Constitution of the United States.

"2. He is entitled to a writ of habeas corpus from this court, and a writ will issue, unless the respondent and the State of California shall within 60 days from the date this judgment becomes final institute proceedings to conduct a hearing before the California Adult Authority in regard to the refixing of petitioner's sentence beyond May 21, 1967, at which hearing the petitioner shall have the right to confront and cross-examine witnesses against him."

It is further ordered that the clerk this date shall serve copies of this order by United States mail upon (1) the petitioner, (2) petitioner's attorney, Robert Payson, Esq., 450 North Roxbury Drive, Fifth Floor, Beverly Hills, California, (3) the California Attorney General, (4) the Chairman of the California Adult ·Authority, and (5) the respondent.