Paul Edward ANDERSON, Petitioner,

v.

Louis S. NELSON, Warden,
Respondent.

No. C–72–825 AJZ.

United States District Court,
N. D. California,

Dec. 29, 1972.

Ezra Hendon, Berkeley, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., Ira J. Ross, Deputy Atty. Gen., San Francisco, Cal., for respondent.

## MEMORANDUM OPINION AND ORDER SETTING EVIDENTIARY HEARING

ZIRPOLI, District Judge.

Petitioner Anderson, a state prisoner, originally filed this petition to challenge a 1970 redetermination of his sentence by the California Adult Authority, arguing that the procedure employed denied him due process of the laws. In a supplemental traverse—the first pleading filed by his court appointed attorney—petitioner also challenged the 1970 revocation of his parole.

Anderson was initially convicted for forgery (Calif.Pen.Code § 470), and pursuant to California Penal Code § 1168, the court sentenced him to be imprisoned without specifying a specific term to be served. Once imprisoned, petitioner came under the control of the California Adult Authority, which has broad authority to determine and redetermine

petitioner's sentence within the statutory limits prescribed for the offense of forgery. Calif.Pen.Code §§ 3020, 3023. Until a shorter term was established, petitioner was presumed to be serving the maximum term allowed—fourteen years. *See* Calif.Pen.Code § 2940; In re McLain, 55 Cal.2d 78, 85, 9 Cal.Rptr. 824, 357 P.2d 1080 (1960), cert. denied, 368 U.S. 10, 82 S.Ct. 18, 7 L.Ed.2d 18 (1961). Petitioner's sentence was reduced to five years on December 11, 1968, by an Adult Authority order, and parole was granted for the last two and one-half years of the sentence.

On December 17, 1969, Anderson was paroled as planned. On May 15, 1970, however, he was declared a "Parolee at Large" and his parole was suspended, because investigation by his parole agent failed to verify that Anderson was residing at the addresses listed in his May, 1970, monthly report. As a result of Adult Authority Resolution 171,[1] this action also automatically revoked the earlier order of the Adult Authority fixing Anderson's terms to five years, so his sentence reverted to the fourteen year maximum. Petitioner was arrested June 9, 1970, and was then extradited to San Francisco to face charges of cashing a check without sufficient funds (Calif. Pen.Code § 476a). Anderson pleaded guilty, and was sentenced to four months in county jail. During this time, the Adult Authority again suspended petitioner's parole, and the Adult Authority also ordered that he be returned to prison for parole revocation proceedings. This action was taken on the basis of a parole agent's report, which charged Anderson with violating the conditions of his parole by: (1) committing a violation of Penal Code § 476a; (2) leaving his place of residence without his parole agent's permission; and (3) failing to submit a monthly report for June, 1970. The Adult Authority held a parole revocation proceeding on November 30, 1970, at which Anderson pleaded guilty to the first charge and was found guilty of the other two. As a result, his parole was revoked.

## I. Challenge to the Parole Revocation

On September 13, 1971, the Adult Authority granted petitioner a second parole release date, and on June 8, 1972, he was paroled. Thus, petitioner no longer suffers any deprivation of liberty on account of the parole suspension and revocation orders of 1970, except as these orders affected the length of petitioner's sentence. The court, therefore, need not consider whether the parole revocation itself ought to be reversed on the basis of the rule announced in Dennis v. California Adult Authority, 456 F.2d 1240 (9th Cir. 1972).

## II. Challenge to the Redetermination of Sentence

The substantial issue presented by this petition is whether petitioner was denied due process of the laws when his sentence was automatically redetermined at maximum following the suspension and revocation of his parole. This precise issue was considered in Hester v. Craven, 322 F.Supp. 1256 (C.D.Cal. 1971), vacated as moot, No. 71–1662 (9th Cir. August 26, 1971), and Judge Ferguson concluded that the Adult Authority Resolution 171 deprives California prisoners of their right to liberty without due process of the laws. As discussed in *Hester, id.,* 322 F.Supp. at 1259–1261, Judge Browning's opinion in Sturm v. California, 395 F.2d 446, 449–450 (9th Cir. 1967) (Browning, J., concurring), the only Ninth Circuit opinion

---

1. Adult Authority Resolution 171 provides, *inter alia:*

 BE IT FURTHER RESOLVED, that, effective April 1, 1951, when paroles are cancelled, suspended, and/or revoked, the previous action fixing term will be rescinded (except in those cases where the prisoner is already serving the maximum) and the prisoner shall be considered as serving the maximum term as prescribed in the Indeterminate Sentence Law, subject to further order of the Adult Authority. . . .

to consider the issue,[2] reached the same conclusion. Since these decisons were rendered, however, the Ninth Circuit, in the series of cases beginning with Dennis v. California Adult Authority,[3] *supra*, and the United States Supreme Court, in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), have clarified the due process requirements that must be met by administrative proceedings affecting prisoners' rights. Therefore, the court will consider the present case in light of the principles announced in these recent cases, rather than relying on *Hester*. But because Judge Ferguson's carefully written opinion foreshadowed the reasoning of the later Ninth Circuit and Supreme Court opinions, this opinion often relies upon the reasoning of *Hester*, and it largely agrees with Judge Ferguson's conclusions.

A. *Refixing of Sentences and the Requirements of Due Process*

Although sentencing is traditionally a judicial function, it is now clear that when the task is delegated to an administrative agency a defendant is not entitled to the full panoply of criminal rights. *See* Morrissey v. Brewer, *supra* at 480, 92 S.Ct. 2593; Dennis v. California Adult Authority, *supra*, 456 F.2d at 1241 n.1. Thus, the court cannot properly analogize the present case to the revocation of probation and the imposition of sentence by a judicial tribunal, where a defendant must be accorded several substantial rights, including the appointment of counsel. *See* Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Rather, the court must compare the refixing of sentence to other state action that condemns a person to "suffer grievous loss" of an interest within the contemplation of the "liberty or property" language of the Fourteenth Amendment. *See* Morrissey v. Brewer, *supra*, 408 U.S. at 481, 92 S.Ct. 2593; Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). In making this determination, it, of course, does not matter whether the governmental benefit taken away is best classified as a "right" or "privilege." *See* Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Goldberg v. Kelly, *supra* 397 U.S. at 262, 90 S.Ct. 1011.

Although it is improper to analogize the present case to a judicial criminal proceeding, it is not irrelevant that here we are considering the imposition of a longer period of imprisonment, traditionally a criminal penalty. When state action causes harm in the nature of a criminal sanction, the Supreme Court has regularly held that, although the loss is inflicted by an administrative agency or a court in a "civil" proceeding, the government must afford procedural due process. *See* Morrissey v. Brewer, *supra*; Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). The reason, as the Court explained in *Gault*, is basic to this country's idea of liberty:

Failure to observe the fundamental requirements of due process has resulted in instances, which might have been avoided, of unfairness to individuals and inadequate or inaccurate findings of fact and unfortunate pre-

2. Like the cases discussed in *Hester*, the recent case, Perkins v. Craven, 469 F.2d 659 (9th Cir. 1972), considers the power of the Adult Authority to redetermine sentences, not the procedures used.

3. M'Clary v. California Adult Authority, 466 F.2d 1122 (9th Cir. 1972); Griffin v. California Adult Authority, 464 F.2d 602 (9th Cir. 1972); Mays v. Nelson, 464 F.2d 585 (9th Cir. 1972); Wilburn v. Nelson, 458 F.2d 502 (9th Cir. 1972).

scriptions of remedy. Due process of law is the primary and indispensable foundation of individual freedom. It is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise. As Mr. Justice Frankfurter has said: "The history of American freedom is, in no small measure, the history of procedure."

387 U.S. at 19–21, 87 S.Ct. at 1439 (footnotes omitted).

■ Because of the grievous loss of liberty that results from the redetermination of a sentence, and because the loss to a prisoner that results from a redetermination of his sentence to maximum is one that requires the application of due process principles, it does not matter that the judicially imposed sentence is not being extended. In *Morrissey* a major factor in the court's determination that due process applies to parole revocation was that a parolee must serve the remaining portion of their original sentence in prison, often a lengthy period of incarceration, if his parole is revoked. 408 U.S. at 482, 92 S.Ct. 2593. *See also* Specht v. Patterson, *supra*; In re Tucker, 5 Cal.3d 171, 193, 95 Cal.Rptr. 761, 486 P.2d 657 (1971) (Tobriner, J., concurring and dissenting). Regardless of the formal characterizations of the indeterminate sentence laws, the situation in the present case is similar; an increased period of incarceration results from the redetermination of a sentence. As Judge Browning explained in Sturm v. California Adult Authority, *supra* 395 F.2d at 449 (concurring opinion), the reality of increased incarceration cannot be ignored by giving talismanic effect to the judicially imposed maximum sentence.

The judicial imposition of a [maximum] sentence upon [a prisoner] is no more than a legislatively mandated device for transferring the sentencing function from the State court to the State administrative agency with a grant of jurisdiction over [the prisoner's] person for a period sufficiently long to enable the agency to perform its functions under the State's indeterminate sentencing law. Use of that device cannot be seized upon as a means to validate whatever action the administrative agency might subsequently choose to take, no matter how seriously the [prisoner] might be injured, and without regard to whether the agency's action was arbitrary, basically unfair, or invidiously discriminatory.

Because of the loss of liberty that results from the redetermination of a sentence, a deprivation like an additional criminal sanction, the court concludes that due process applies. *See* In re Prewitt, Cal., 105 Cal.Rptr. 318 at 322, 503 P.2d 1326 at 1330 (1972) (dictum).

**B. *Evaluation of California's System of Automatically Redetermining Sentences Pursuant to Adult Authority Resolution 171***

Pursuant to Adult Authority Resolution 171, a parolee's sentence is refixed at maximum by either a suspension or revocation of parole. Petitioner contends that neither the two meetings at which his parole was suspended nor the parole revocation hearing afforded him the due process rights necessary for this situation.

■ Due process is not a fixed set of rights; it "is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, *supra*, 408 U.S. at 481, 92 S. Ct. at 2600. *See also* Dennis v. California Adult Authority, *supra*, 456 F.2d at 1241. The precise requirements in any situation are determined by the nature of the private interest affected by governmental action and of the governmental function involved. Morrissey v. Brewer, *supra*, 408 U.S. at 481, 92 S.Ct. 2593; Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). As discussed, the private interest involved in the present case is the fundamental interest of liberty from state custody after

the initially fixed sentence expires. The state's interests are analogous to those evaluated by the Supreme Court in *Morrissey*: Having found a person guilty of a crime, the state seeks to establish a period of supervision—part of which may be served in prison and part on parole—over the offender's liberty in order to rehabilitate him and release him after he becomes a potentially law-abiding, productive citizen. In California the legislature has especially emphasized the importance of rehabilitation, rather than retribution, by adopting the indeterminate sentence system. *See generally*, In re Lee, 177 Cal. 690, 692, 171 P. 958 (1918); Parsons-Lewis, Due Process in Parole-Release Decisions, 60 Calif.L.Rev. 1518, 1522–1524 (1972); Van Dyke, Parole Revocation Hearings in California, 59 Calif.L.Rev. 1215, 1222–23 (1971); Note, 7 Calif.L.Rev. 132 (1918). One essential of this system is that the state be able to adjust the length of sentence so that a person will be supervised as long as he constitutes an unreasonable threat to life or property, but no longer. For example, an initial determination of sentence often must be adjusted based upon observations of the person's adjustment while on parole. Thus, the state has an overwhelming interest in being able to redetermine sentences, just as it has an overwhelming interest in being able to revoke paroles. *See* Morrissey v. Brewer, *supra* 408 U.S. at 483, 92 S.Ct. 2593.

■ But, just as it has no interest in arbitrarily revoking paroles, *see id.*, a state has no justifiable interest in arbitrarily redetermining sentences. Indeed, the contrary is the case: Because of Adult Authority Resolution 171, redetermination of sentence often depends upon whether a parolee violated a condition of his parole. Allowing a parolee the fundamental elements of due process will help to assure that proper determinations are made. Moreover, "fair treatment . . . will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." Morrissey v. Brewer, *supra* at 484, 92 S.Ct. at 2602. *See also*

Kadish, Legal Norm and Discretion in the Police and Sentencing Process, 75 Harv.L.Rev. 904, 924 (1962); *Van Dyke, supra* at 1223 & n. 37.

■ After considering the valid interests of petitioner and the state, the court concludes that petitioner was denied necessary elements of fundamental due process when his sentence was automatically redetermined at maximum following the first order suspending his parole. Although either the second parole suspension or the parole revocation would have independently caused petitioner's sentence to be reset at the maximum, the initial deprivation of his rights was not vitiated by these later hearings, because at each of them petitioner was again deprived of fundamental due process rights.

There is no record indicating precisely what occurred at any of the hearings affecting petitioner's parole, but several commentators have described the general nature of these hearings. *See* In re Tucker, *supra* 5 Cal.3d at 185–188, 95 Cal.Rptr. 761, 486 P.2d 657 (Tobriner, J., concurring and dissenting); Calif. Ass. Interim Comm. on Criminal Procedure, Parole Revocation Procedures 2 (1972); California Continuing Education of the Bar, California Criminal Law Practice 604–608 (1969); *Van Dyke, supra* at 1218–1222; Comment, 10 Santa Clara Lawyer 319–322 (1970). The court relies on these descriptions in its evaluation of the procedures used.

*1. Parole Suspension Hearings*

Anderson's parole suspensions were both ordered by Adult Authority panels at "Parole and Community Services Hearings," weekly meetings held to decide whether parole suspensions are merited. The only information considered by these panels is the parole agent's report and the parolee's prior history, as indicated by his cumulative case summary (this file is described in California Criminal Law Practice, *supra* at 534–60). The parolee is not given notice of the hearing, and could not at-

tend even if he knew of it. The hearing is closed, and the only record kept is an indication of action taken.

 Clearly, redetermination of a parolee's sentence to maximum cannot constitutionally be predicated upon this type of proceeding. "The fundamental requisite of due process of law is the opportunity to be heard." Goldberg v. Kelly, *supra* 397 U.S. at 267, 90 S.Ct. at 1020. To act without affording at least this basic right, and sufficient notice to make the right to be heard meaningful, "would be to act blindly and arbitrarily." Dennis v. California Adult Authority, *supra* at 1241. *See also* In re Tucker, *supra* 5 Cal.3d at 196–198, 95 Cal.Rptr. 761, 486 P.2d 657 (Tobriner, J., concurring and dissenting). It is, therefore, not surprising that in the similar situation of parole revocation the Supreme Court required notice and an opportunity to be heard at both the preliminary and revocation hearings in the procedure it outlined. Morrissey v. Brewer, *supra* 408 U.S. at 486–487, 489, 92 S.Ct. 2593.

### 2. Parole Revocation Proceeding

If a panel of the Parole and Community Services Division recommends parole revocation, a parolee is taken into custody and transferred to the Reception Guidance Center at Vacaville. A parole revocation hearing is conducted about sixty days later. The prisoner receives prior notice of the specific charges against him and may personally appear. At the hearing, the hearing representative begins by reading to the prisoner the facts on which the charges are based. Often, however, the source of the information is not revealed. Then, the prisoner may present written infor-

mation and his own oral testimony to refute the charges, but he may not be represented by an attorney and he may not call other witnesses. No witnesses appear to support the charges, so the prisoner has no opportunity to cross-examine witnesses against him.

Although a prisoner has several procedural rights at a parole revocation hearing, all the necessary elements of due process for this situation are not present. A California legislative committee described the prisoner's position at such a hearing as follows:

> He can only speak for himself and he is forced to confront, not witnesses, but sheaves of reports he has never even looked at. The reports themselves are the product of a parole officer who wrote them after he participated in the initial decision to revoke parole. There is no way to check the reliability of the parole officer's observations, no way to evaluate the reliability of his sources, and no way to determine what conscious or unconscious motivations may have dictated what he put in or left out of his report. In short, the parolee is impotent. . . .

Cal. Ass. Interim Comm. on Criminal Procedure, Parole Revocation Procedure 4–5 (1970). The chief difficulty preventing the prisoner from defending himself is the denial of an opportunity to confront and cross-examine witnesses against him.[4] The basis of a revocation decision is a finding that a parolee has committed certain acts violating the conditions of his parole. A fact-finding procedure that denies the rights of confrontation and cross-examination is not reasonably and fairly designed to enable the Adult Authority to decide the issue

---

4. This is not intended to suggest that other rights may not also be required when a sentence is redetermined; other rights probably should be granted, at least in some circumstances. *See* Morrissey v. Brewer, *supra* 408 U.S. at 489, 92 S.Ct. 2593; Mays v. Nelson, 464 F.2d 585 (9th

Cir.1972). Because of *Morrissey*, however, it is clear California will have to modify its parole revocation procedure. There is, therefore, no reason to consider in detail the interrelation of Adult Authority Resolution 171 and the now unconstitutional revocation procedure.

of guilt. *See* Dennis v. California Adult Authority, *supra* 456 F.2d at 1241; Hester v. Craven, *supra* 322 F.Supp. at 1261.

Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall enjoy the right "to be confronted with the witnesses against him." This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, but also in all types of cases where administrative and regulatory actions were under scrutiny.

Greene v. McElroy, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959) (footnote and citations omitted). When a specific finding is made that an informant would be subjected to risk of harm if his identity is disclosed, these rights may be limited, but a general rule denying confrontation and cross-examination is too broad. *See* Morrissey v. Brewer, *supra* 408 U.S. at 487, 489, 92 S.Ct. 2593. Thus, the parole revocation proceeding did not cure the violation of due process of the prior parole suspension hearings.

### III. Effect of Petitioner's Guilty Plea

The state argues that even if petitioner was subjected to a procedure that might ordinarily constitute a deprivation of due process, in the present case there was no deprivation of petitioner's rights. Petitioner pleaded guilty to a violation of California Penal Code § 476a, and in any case, this alone constituted sufficient grounds to redetermine his sentence. Support for this argument is based upon Dennis v. California Adult Authority, *supra*. In *Dennis* the petitioner's parole was revoked because he operated a motor vehicle without a valid license and without the written consent of his parole officer. The court held that, because petitioner had pleaded guilty to the first charge in a criminal proceeding, he was not entitled to relief, even though he had been deprived of due process rights that prevented him from disproving the second charge.

The holding of Dennis, however, is not that every parolee whose parole is revoked partially on the basis of a guilty plea at a criminal proceeding is foreclosed from challenging the revocation. Subsequent to *Dennis* in Mays v. Nelson, 464 F.2d 585 (9th Cir. 1972), the Circuit Court upheld this court's order, 323 F.Supp. 587 (N.D.Cal.1971), requiring a new redetermination hearing for a parolee whose parole had been revoked partially because of a conviction, following a *guilty plea, for disturbing the peace* (Calif.Pen.Code § 415). Mays had also admitted before the Adult Authority that he had violated the parole condition requiring him to obey all laws. This court thought that nevertheless a new redetermination hearing ought to be required, because the Adult Authority had acted on the erroneous assumption petitioner had initially been charged with assault with a deadly weapon. Moreover, petitioner had been unable to effectively present to the Adult Authority the mitigating facts that the conviction had stemmed from a family quarrel, and that new living arrangements made it unlikely the problem would recur.

■ Thus, the *Dennis* holding is limited to cases in which there is an admitted guilty plea and no facts suggesting that the guilty plea alone would not have caused the Adult Authority to revoke parole. Petitioner argues that in the present case there is a fact that ought to have been presented to the Adult Authority: that his guilty plea was based on his parole agent's promise that the agent would recommend reinstatement of parole. If this promise was made, it was violated; the agent's report was supplied to the court by respondent, and it strongly urges that parole be revoked.

If petitioner's allegations are true, there is a serious constitutional question whether the Adult Authority could act on the basis of a breach of the promise after petitioner had served the sentence imposed as a result of the guilty plea. In Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971), the Supreme Court insisted "that when a [guilty] plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

Regardless of whether *Santobello* would require the court to vacate Anderson's guilty plea in the circumstances of this case, if petitioner's allegations are true, the case is clearly one in which the prior guilty plea ought not to foreclose further inquiry. The violated plea bargain, like the erroneous information relied upon in *Mays*, is a circumstance that might have influenced the Adult Authority to act differently if petitioner had been afforded an opportunity to show the true state of facts.

■ The court concludes that an evidentiary hearing must be held for the sole purpose of determining whether petitioner's guilty plea was influenced by a reasonable belief induced by the parole agent that the parole and sentence would be unaffected by the conviction.